UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| STUART MILLS, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No.: 3:25-cv-1121-LCB |
| | ) |
| PLAYTIKA HOLDING CORP., *et al.*, | ) |
| | ) |
|    Defendants. | ) |

## ORDER

    Playtika Holding Corporation develops and distributes games on the internet that mimic slot machines. These games allow players to purchase in-app coins that have no or very little real-world value and allow for more playtime—a fun game, they say, for their customers. But after playing the games and purchasing the in-app coins, Plaintiff Stuart Mills alleges this is not simply mimicry: It's actually full on gambling. As a result, Mills sued Playtika Holding Corp. and Playtika LTD, seeking to get his money back under an Alabama law first passed nearly 200 years ago: Section 8-1-150(a) of the Alabama Code.

    In the summer of 2025, *Mills* and ten similar lawsuits were filed in Alabama state court, all against app developers like Playtika, and one-by-one, the defendants removed those cases under the Class Action Fairness Act ("CAFA") to the U.S. District Court for the Northern District of Alabama. On September 12, the Court

found a "common question of law or fact" between the cases and consolidated them under Rule 42 of the Federal Rules of Civil Procedure. The plaintiffs in two of those cases voluntarily dismissed their suits under Rule 41(a)(1)(A)(i),[1] leaving only nine before the Court.[2]

The plaintiffs in those nine suits moved to remand to state court on the grounds that the defendants had not met CAFA's $5 million amount-in-controversy requirement, because, they claim, none of the cases had incurred more than $5 million at the time of removal. The defendants respond that they have indeed met this jurisdictional threshold, because they have proven with affidavits that the amount in controversy will more likely than not exceed $5 million over the course of the litigation and before the final judgment. In reply, two plaintiffs withdrew their

---

[1] Specifically, on November 12, 2025, Michael Sumerel and Jacob Seal dismissed *Sumerel v. High 5 Games,* LLC, 3:25-cv-1159 (N.D. Ala. July 17, 2025) and *Seal v. VGW LTD*, 3:25-cv-1123 (N.D. Ala. July 11, 2025) respectively.

[2] Namely, *Mills v. Playtika*, 3:25-cv-1121-LCB (N.D. Ala. July 11, 2025); *Gann v. Sunflower LTD*, 3:25-cv-1122-LCB (N.D. Ala. July 11, 2025); *Mills v. ZYNGA Inc.*, 3:25-cv-1126-LCB (N.D. Ala. July 11, 2025); *White v. Aristocrat Leisure LTD*, 3:25-cv-1130-LCB (N.D. Ala. July 11, 2025); *Pilati v. Realplay Tech Inc.*, 3:25-cv-1170-LCB (N.D. Ala. July 18, 2025); *McGee v. Doubledown Interactive Inc.*, 3:25-cv-1192-LCB (N.D. Ala. July 23, 2025); *Jackson v. ARB Gaming LLC*, 3:25-cv-1199-LCB (N.D. Ala. July 24, 2025); *Bishop v. Woopla Inc.*, 3:25-cv-1216-LCB (N.D. Ala. July 28, 2025); and *Hester v. A1 Development LLC*, 3:25-cv-1234 (N.D. Ala. July 30, 2025).
   In addition to these nine consolidated actions and the two that were dismissed, there are two other lawsuits before the Court that raise similar but discrete legal theories concerning companies that develop and maintain casino-like apps. *See Hester v. Blazesoft LTD*, 3:25-cv-2165 (N.D. Ala. December 19, 2025) and *Hester v. Blazesoft LTD*, 3:25-cv-2166 (N.D. Ala. December 19, 2025). Since those cases raise materially different questions of law, they have not been consolidated with these nine.

motions to remand,[3] while the other seven now contend that future earnings are too speculative for the Court to consider.

Having considered the facts, the briefs, and the governing the law, the Court concludes that the defendants are correct. In each case, the defendants have shown by a preponderance of the evidence that the amount-in-controversy will exceed the $5 million jurisdictional threshold before the final judgment, and the Court thus has subject-matter jurisdiction under CAFA. For the reasons below, the Court therefore **DENIES** plaintiffs' motions to remand.

## I.   FACTUAL BACKGROUND

The defendants, developers of online and smartphone gaming applications, participate in the "social casino game" industry, an online economy of gaming sites that allows players to simulate slot machine games or other games found in casinos. For example, Playtika created and distributes the apps Slotomania, Caesars Casino, and House of Fun, which allow users to play slot machines, poker, and other casino-type games online. (Doc. 1-2 at 11).[4]

---

[3] In *Gann*, 3:25-cv-1122-LCB (Doc. 33) and *Jackson*, 3:25-cv-1199-LCB (Doc. 41).

[4] The factual allegations from the parties' pleadings and notices of removal are materially similar in all nine cases. *See Gann*, 3:25-cv-1122-LCB at ECF No. 1-3; *Mills,* 3:25-cv-1126-LCB at ECF No. 1-2; *White*, 3:25-cv-1130-LCB at ECF No. 1-2; *Pilati*, 3:25-cv-1170-LCB at ECF No. 1-1; *McGee*, 3:25-cv-1192-LCB at ECF No. 1-1; *Jackson*, 3:25-cv-1199-LCB at ECF No. 1-2; *Bishop*, 3:25-cv-1216-LCB at ECF No. 1-1; and *Hester*, 3:25-cv-1234-LCB at ECF No. 1-1. For purposes of illustration, the Court cites to the filings in the lead case only, except where minor differences among the consolidated cases merit attention.

For Playtika's slot machine app, players receive gold coins for free when they sign up. *Id.* These coins are needed to spin the slot machine; without them, the players can't play. *Id.* If a player runs out of these coins, there are three ways to get more. First, the player can win the coins as a reward from playing the game—that is, by "spinning" the online slot machine. *Id.* Second, the player can wait until he or she receives a new batch of free coins after a waiting period set by the game. *Id.* Third, the player can buy the coins with cash. *Id.* Generally, players cannot redeem these coins for real-world currency; in most of the defendants' games, in-app coins allow only for more spins. *Id.* In certain games, however, players may also purchase special, premium coins that *can* be redeemed for real-world currency. *See, e.g.*, *Hester*, 3:25-cv-1234-LCB at ECF 1-1 at 11.

Mills and the other plaintiffs are Alabama residents who have purchased coins from the defendants' games. (Doc. 1-2 at 7, 11). Mills, for instance, purchased coins from games created by Playtika and by ZYNGA. *Id.*; *Mills*, 3:25-cv-1126-LCB at ECF No. 1-2 at 11. He and the other plaintiffs originally sued in the Circuit Court of Franklin County, Alabama, seeking to recover the money they spent on in-app purchases and to certify a class of all similarly situated individuals in Alabama. (Doc. 1-2). The plaintiffs argue that they fell prey to these apps, which take advantage of the gambling addictions of Alabama residents. *Id.* at 7–10.

Playtika and the other defendants removed these nine cases between July 11 and 30, 2025, and from then through mid-September, each case proceeded at its own pace. (Doc. 1). On September 12, finding "a common question of law or fact" between them, the Court consolidated these and two other now-dismissed lawsuits under the lead case of *Mills v. Playtika*, 3:25-cv-1121. (Doc. 14 at 5). This belated consolidation meant that each case saw a unique slew of filings through September 12, and so to that date, the dockets between the cases do not track one-to-one. After that date, however, all filings have been docketed in the lead case and spread to the others from there.

The defendants in each case allege that the amount in controversy will exceed CAFA's $5 million jurisdictional threshold before final judgment. (Doc. 1). In mid-August, the plaintiffs each moved to remand their cases to state court. (Doc. 6). All defendants have opposed the motions, and all have filed declarations in support of their allegations averring that the amount in controversy will exceed $5 million before final judgment. In *McGee v. DoubleDown Interactive LLC*, that declaration was attached to the notice of removal. 3:25-cv-1192-LCB (N.D. Ala. July 23, 2025), ECF No. 1-2. In the other eight cases, the declarations were filed in post-removal supplements. (Doc. 15-1).

In seven of those declarations (including *McGee*'s), the defendants aver that the amount in controversy, though not yet $5 million at the time of removal, will

5

exceed that amount before final judgment. (Doc. 15-1).[5] The other two declarations aver that the $5 million amount-in-controversy threshold has already been reached, and so the plaintiffs in these two cases have withdrawn their motions to remand. (Docs. 33 & 41). Since then, the defendants in *Hester*, 3:25-cv-1234-LCB; *Pilati*, 3:25-cv-1170-LCB; and *Bishop*, 3:25-cv-1216-LCB have filed supplemental affidavits of their own to prove that the amount in controversy had passed the $5 million threshold. (Docs. 52-1, 53-1 & 54-1).

The upshot of all this history is this: the plaintiffs in seven of these cases now move for remand, contending that the Court lacks subject-matter jurisdiction to hear their cases because the defendants had not met the amount-in-controversy requirement at the time of removal. (Doc. 6).[6] Specifically, the plaintiffs contend that the defendants have failed to satisfy CAFA's jurisdictional threshold, because (1) they did not allege that damages totaled $5 million at the time of removal, and (2) any future potential earnings would be too speculative to prove by a preponderance of the evidence that the amount in controversy through final judgment is $5,000,000. *Id.*

---

[5] *See also Mills*, 3:25-cv-1126-LCB, ECF No. 24; *White*, 3:25-cv-1130-LCB, ECF No. 16-1; *Pilati*, 3:25-cv-1170-LCB, ECF No. 28; *McGee*, 3:25-cv-1192-LCB, ECF No. 1-2; *Bishop*, 3:25-cv-1216-LCB, ECF No. 25; and *Hester*, 3:25-cv-1234, ECF No. 27.

[6] *See also Mills*, 3:25-cv-1126-LCB; *White*, 3:25-cv-1130-LCB; *Pilati*, 3:25-cv-1170-LCB; *McGee*, 3:25-cv-1192-LCB; *Bishop*, 3:25-cv-1216-LCB, and *Hester*, 3:25-cv-1234.

## II. LEGAL STANDARDS

Actions filed in state court may be removed to federal court under federal diversity jurisdiction. 28 U.S.C. § 1441(b). But before a court may reach the case's merits, it must determine whether it has subject-matter jurisdiction. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Congress enacted CAFA to allow federal courts to hear interstate cases of national importance under diversity jurisdiction "to put an end to certain abusive practices by plaintiffs' class counsel." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1193 (11th Cir. 2007) (citing CAFA § 2, 119 Stat. at 5). CAFA grants subject-matter jurisdiction for class actions so long as (1) there is minimum diversity between the defendants and any member of the plaintiff class, (2) the amount in controversy exceeds $5 million in aggregate, and (3) there are at least 100 members in the proposed plaintiff class. *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (first citing 28 U.S.C. § 1332(d)(2), (5)-(6); and then citing 7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1756.2 (3d ed.2005)).

Where the plaintiff has not alleged a specific amount of damages, the defendant seeking removal "must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010). Courts must "strictly construe removal statutes, resolving all doubts in favor of remand." *Mann v. Unum Life Ins.*

*Co. of Am.*, 505 F. App'x 854, 856 (11th Cir. 2013). When analyzing the jurisdictional requirement, courts look to the amount in controversy "at the time of removal, not later." *Pretka,* 608 F.3d at 751. The "pertinent question is what is *in controversy* in the case." *Id.* In other words, "the amount of controversy . . . is an estimate of the amount that will be put at issue *in the course of the litigation.*" *Id.* (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008)) (emphasis added).

To determine whether a defendant has carried its burden, courts may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence. *Pretka,* 608 F.3d at 753–54. If the notice of removal is bereft of factual allegations concerning the amount in controversy, courts may not "divine[]" that amount "by looking to the stars." *Id.* A defendant may submit a wide range of evidence to support its argument that the amount-in-controversy has been reached to establish jurisdiction. *Id.* at 755–56. Finally, a party may supplement their showing with post-removal evidence. *Id.* at 774.

### III. DISCUSSION

The Court concludes that the defendants have met their burden of proving by a preponderance of the evidence that the amount in controversy exceeds $5 million. The declarations that each defendant has provided, as well as the reasonable inferences and deductions from those declarations, persuade the Court that more than

$5 million is likely to be "put at issue in the course of the litigation" in each case. *Pretka,* 608 F.3d at 751

While the Court's conclusion flows directly from binding case law of the United States Circuit Court of Appeals for the Eleventh Circuit, similar decisions by courts throughout the country fortify this conclusion. For example, a district court in Oklahoma concluded that the defendant had satisfied CAFA's amount-in-controversy requirement even though the damages had not reached $5 million at the time of removal. *Whisenant v. Sheridan Prod. Co., LLC*, 2016 WL 5338557, at *6 (W.D. Okla. Sept. 23, 2016). In *Whisenant*, the plaintiffs had alleged that damages arising from royalty payments on natural gas streams amounted to $4,691,482.00. *Id.* at *5. The complaint, however, defined damages with respect to a discrete point in the litigation, and the defendants produced evidence that the royalties would exceed $5 million before that point. *Id.* at *6. Thus, after considering the post-removal damages, the court concluded that the defendants had met their burden of showing that the amount in controversy would be reached over the course of litigation. *Id.* at *6.

Likewise, a district court in Michigan concluded that a defendant had met its burden of showing that the amount in controversy would exceed the $75,000 jurisdictional threshold in a diversity case, even though damages had not yet reached that figure at the time of removal. *Kendrick v. FCA US LLC*, 2022 WL 2758518, at

9

*4 (E.D. Mich. July 14, 2022). In *Kendrick*, the plaintiffs sued a car assembly plant for nuisance and negligence, seeking recovery for annoyance, discomfort, and damage to their property value. *Id.* at *1, *4. The complaint alleged damages "up to the time of trial." *Id.* at *4. Thus, after calculating the damages projected over the course of the litigation, the court concluded that the amount-in-controversy requirement had been met at the time of removal. *Id.*

It also follows that courts may not consider future damages if the plaintiffs are not seeking them. For example, a plaintiff seeking rescission of a printing press sale—and only seeking that rescission—did not meet the amount-in-controversy requirement for diversity jurisdiction, because the alleged costs were under the amount-in-controversy requirement, and there were no other potential damages that could be recovered in the litigation. *Printworks, Inc. v. Dorn Co.*, 869 F. Supp. 436, 440–41 (E.D. La. 1994).

Nor may courts consider future damages that are too speculative. For example, the Eleventh Circuit concluded that calculating the value of an injunction preventing a car-rental company from selling insurance was too speculative to establish jurisdiction. *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 973 (11th Cir. 2002). This was because, "whether or not an injunction is granted in this case, the plaintiffs will be able to avoid paying for the insurance," and the damages calculation would otherwise be too speculative. *Id*. Notably, neither party provided adequate

information about the cost incurred by the rental agreements, and so the court held that defendants' "conclusory basis for federal diversity jurisdiction . . . [was] so insufficient that [it did] not give rise to a credible assertion" that the amount-in-controversy would be reached. *Id.* at 974.

Here, the plaintiffs requested damages up to "the entry of final judgment." (Doc. 1-2 at 16). And the defendants, either in their removal petitions or shortly afterwards, filed affidavits stating that the $5 million amount-in-controversy would be reached before a final judgment. *McGee*, 3:25-cv-1192-LCB, ECF No. 1-2; (Docs. 15-1, 16-1, 24, 25, 27, & 28). Since that time, three defendants have confirmed in supplemental declarations that the amount in controversy has already reached $5 million. (Docs. 52-1, 53-1 & 54-1). Additionally, the plaintiffs have not challenged the authenticity of the affidavits; they merely state that any potential future damages are speculative.

Thus, the Court finds that the defendants have shown by a preponderance of the evidence that the amount in controversy in *Mills*, 3:25-cv-1121-LCB; *Mills*, 3:25-cv-1126-LCB; *White*, 3:25-cv-1130-LCB; *Pilati*, 3:25-cv-1170-LCB; *McGee*, 3:25-cv-1192-LCB; *Bishop*, 3:25-cv-1216-LCB, *and Hester*, 3:25-cv-1234 will exceed the $5 million jurisdictional minimum, because the damages will more likely than not exceed that figure over the course of the litigation. Accordingly, the Court

has subject-matter jurisdiction under CAFA to preside over these seven consolidated cases.

## IV.  CONCLUSION

The Court therefore **ORDERS** as follows:

1. The Motion to Remand (Doc. 6) in *Mills v. Playtika Holding Corp.*, 3:25-cv-1121-LCB is **DENIED**.

2. The Motion to Remand (Doc. 6) in *Mills v. ZYNGA Inc.*, 3:25-cv-1126-LCB is **DENIED**.

3. The Motion to Remand (Doc. 13) in *White v. Aristocrat Leisure LTD*, 3:25-cv-1130-LCB is **DENIED**.

4. The Motion to Remand (Doc. 7) in *Pilati v. Realplay Tech Inc.*, 3:25-cv-1170-LCB is **DENIED**.

5. The Motion to Remand (Doc. 10) in *McGee v. Doubledown Interactive LLC*, 3:25-cv-1192-LCB is **DENIED**.

6. The Motion to Remand (Doc. 8) in *Bishop v. Woopla Inc.*, 3:25-cv-1216-LCB is **DENIED**.

7. The Motion to Remand in *Hester v. A1 Development LLC*, 3:25-cv-1234-LCB is **DENIED.**

8. Because all parties stipulated to binding arbitration after the motions to remand have been resolved, the Court **ORDERS** the parties in all nine cases

to binding arbitration under 9 U.S.C. §§ 1-16. (Minute Entry dated December 17, 2025).

9.      These cases are **STAYED** under 9 U.S.C. § 3 pending resolution of the arbitration. The parties must submit a joint status report within the next 60 days apprising the Court of their progress toward arbitrating or otherwise resolving this matter.

10.     Lastly, the Court **DENIES as moot** all other pending motions in these consolidated cases.

11.     The Clerk of Court is **DIRECTED** to administratively close *Mills v. Playtika Holding Corp.*, 3:25-cv-1121-LCB; *Gann v. Sunflower LTD*, 3:25-cv-1122-LCB; *Mills v. ZYNGA Inc.*, 3:25-cv-1126-LCB; *White v. Aristocrat Leisure LTD*, 3:25-cv-1130-LCB; *Pilati v. Realplay Tech Inc.*, 3:25-cv-1170-LCB; *McGee v. Doubledown Interactive LLC*, 3:25-cv-1192-LCB; *Jackson v. ARB Gaming LLC*, 3:25-cv-1199-LCB; *Bishop v. Woopla Inc.*, 3:25-cv-1216-LCB; and *Hester v. A1 Development LLC*, 3:25-cv-1234-LCB. However, the Court retains jurisdiction of these cases for further proceedings.

**DONE** and **ORDERED** this January 20, 2026

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE

13